ARLINE CZEPIEL *v.* ADOLPH CZEPIEL ET AL., EXECUTORS (ESTATE OF JOHN CZEPIEL), ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued May 6—decided May 26, 1959

*Belton A. Copp,* with whom was *Ralph P. Dupont,* for the appellant (plaintiff).

*Norman Sivin,* for the appellees (defendants Ronald Czepiel et al.).

*Edward A. Stoll,* for the appellees (named defendant et al.).

KING, J. The testator, a widower with two children, then sixteen and eight years of age, respectively, executed his last will and testament on January 21, 1954. The pertinent paragraphs of the will are quoted in the footnote.[1] Paragraph 4 gave all the rest, residue and remainder to the testator's children, share and share alike, except that in the case of children over twenty-five at the date of the testator's death the gifts were outright, whereas in the case of children under twenty-five their shares were to be held in trust and paid over as each attained that age. The other paragraphs of the will were not dispositive.

When the will was executed, the testator was forty-eight years old. About two years later he was

---

[1] "1. I declare that I am a widower; that I have two children, Ronald J. Czepiel and Beverly Ann Czepiel.

.    .    .    .    .

"3. My house and land on Dudley Avenue in said Town of Old Saybrook I devise to my children, now or later born, who survive me, share and share alike, subject to the restriction that if I leave a widow, said widow is to have the life use of said house and land provided that she pay the taxes thereon and the cost of maintenance.

.    .    .    .    .

"5. If at the time of my decease I have children who are minors, I appoint Zigmund Czepiel to be their guardian.

"6. It is to be understood that the use of the words 'child or children' in this will shall be construed to mean later born children as well as those now born to me."

married to the plaintiff, a woman whom he had not yet met at the time of the execution of the will. No children were born of this marriage. The Old Saybrook property referred to in paragraph 3 of the will has an approximate value of but $11,500; the approximate value of the entire estate is $250,000. It is the claim of the plaintiff that by the testator's marriage to her the will was revoked under the provisions of what is now § 45-162 of the 1958 Revision.[2] With the provisions as to express revocation we obviously have no concern. Only the portion of the statute regarding implied revocation upon subsequent marriage is involved in this case. The provision as to implied revocation by marriage had its origin in chapter 84 of the Public Acts of 1875 and appeared in the revision of probate laws in 1885. Public Acts 1885, c. 110, § 135; Rev. 1888, § 542. Its immediate effect was to abrogate the common-law rule that marriage alone was not sufficient to revoke an antecedent will, but only marriage coupled with the birth of a child. *Goodsell's Appeal,* 55 Conn. 171, 180, 10 A. 557.

The portion of the statute providing for implied revocation upon the subsequent birth of a child has been before this court in a number of cases. It has been held that an actual gift to the after-born child is not required in order to save a will from implied revocation and that it is sufficient if the will itself,

---

[2] "Sec. 45-162. IMPLIED AND EXPRESS REVOCATION OF WILL. If, after the making of a will, the testator marries or a child is born to the testator or a minor child is legally adopted by him, and no provision has been made in such will for such contingency, such marriage, birth or adoption of a minor child shall operate as a revocation of such will. No will or codicil shall be revoked in any other manner except by burning, canceling, tearing or obliterating it by the testator or by some person in his presence by his direction, or by a later will or codicil."

without resort to extrinsic evidence, shows a prevision on the part of the testator of the contingency of his having another child. *Blake* v. *Union & New Haven Trust Co.,* 95 Conn. 194, 197, 110 A. 833; *Strong* v. *Strong,* 106 Conn. 76, 79, 137 A. 17; *Fulton Trust Co.* v. *Trowbridge,* 126 Conn. 369, 371, 11 A.2d 393. It is obvious from the quoted provisions of the will that the testator envisioned the contingency not only of his remarriage but of his thereafter having children. Indeed, there was not mere prevision of, but actual provision for, both contingencies. The real claim of the plaintiff is that the prevision required by the statute, as applied to implied revocation by subsequent marriage, must be prevision of the possibility of marriage to the particular person married as distinguished from prevision of the possibility of marriage to some then unknown person.

Statutes generally similar to ours in their provisions for implied revocation, although differing in wording, exist in many states, and the cases construing them in respect to subsequent marriage of the testator are collected in an annotation in 127 A.L.R. 750 at page 768. As pointed out in *Fulton Trust Co.* v. *Trowbridge,* supra, 373, "[m]uch of the conflict in the authorities can be explained by the differing phraseology of the statutes." The obvious purpose of our statute is to ensure that the contingency of marriage will not be overlooked in the drafting of a will. The purpose is not to ensure that adequate provision for a spouse will be made. Another statute[3] gives a surviving spouse protection

[3] Under the provisions of § 46-12 of the 1958 Revision, a widow's right to at least the use for life of one-third of the entire estate cannot be defeated by any disposition of the will, if she properly elects to take such a share in lieu of the provision made for her in the will. *DelVecchio* v. *DelVecchio,* 146 Conn. 188, 190, 148 A.2d 554.

from a grossly inadequate testamentary provision as far as such protection is given at all. Section 45-162 does not require that a testator evaluate the merits, as an object of his bounty, of a particular person, whether spouse or after-born child. This would be impossible in the case of an after-born child or, as here, in the case of a spouse unknown to the testator at the date of the execution of the will. The court correctly held that the will was not revoked by the subsequent marriage to the plaintiff.

There is no error.

In this opinion the other judges concurred.